IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LAZARO TAVERA,<br>　　Movant | §<br>§<br>§ | |
| V. | §<br>§ | A-09-CA–717 LY<br>(A-07-CR-164(4)-LY) |
| UNITED STATES OF AMERICA,<br>　　Respondent | §<br>§<br>§ | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:　THE HONORABLE LEE YEAKEL
　　　UNITED STATES DISTRICT JUDGE

Before the Court are the Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 (Clerk's Doc. No. 685); and the Government's Response to Movant's Motion to Vacate, Set Aside or Correct Sentence (Clerk's Doc. No. 693). The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. §636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges, as amended.

**I.　GENERAL BACKGROUND**

Movant Lazaro Tavera ("Tavera") was named in counts one and twenty-two of a superseding indictment filed on October 2, 2007. On November 8, 2007, Tavera entered a plea of guilty to a one count criminal information charging him with possession with intent to distribute more than 50 grams of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). On April 28, 2008, the district court sentenced Tavera to a 168-month term of imprisonment, followed by a four-year

term of supervised release, and ordered that Tavera pay a $100 mandatory assessment fee, and forfeit all right, title and interest in $11,403.00 in U.S. currency to the United States. On May 6, 2008, Tavera timely filed his Notice of Appeal. On January 15, 2009, the Fifth Circuit Court of Appeals issued an order granting Appellee's Motion to Dismiss Appeal, and dismissed the appeal. *See* Government's Exhibit A.

On September 28, 2009, Tavera filed this motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. Tavera alleges that his counsel was ineffective on various bases; that the District Court erred in applying a leader/organizer adjustment to his sentence and on relying on the PSR in doing so; and that the District Court erred in that his sentence was "unreasonable" because he received the same 4-point "leader or organizer" adjustment as the real leaders and organizers of the conspiracy in which he was involved.[1]

## II.  STANDARD OF REVIEW

Under § 2255, there are generally four grounds upon which a defendant may move to vacate, set aside or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. The nature of a collateral challenge under Section 2255 is extremely limited: "A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for

---

[1] Both Tavera and the Government address other arguments that Tavera lists in his Memorandum; however, Tavera does not actually make these arguments in his briefing other than listing them at the beginning. The Court addresses only the arguments that Tavera actually makes and not those he merely lists without any factual or legal support or argument.

the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). If the error is not of constitutional or jurisdictional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

### III.  DISCUSSION

**A.     Was Petitioner Denied the Effective Assistance of Counsel?**

Tavera first argues that he was not provided effective assistance of counsel when his attorney: (1) allowed him to waive his right to appeal without first discussing those rights with him; and (2) lied to him about the length of sentence and promised him a four year sentence when he ultimately received a 14 year sentence.

#### 1.     Standard of Review

In order to prevail on an ineffective assistance of counsel claim, a petitioner must show that his counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id.* A court's review of counsel's performance must be highly deferential, with a strong presumption that the performance was reasonable. *Id.* at 689; *Little v. Johnson*, 162 F.3d 855, 860 (1998), *cert. denied*, 526 U.S. 1118 (1999). A court will not find ineffective assistance of counsel merely because it disagrees with counsel's trial strategy. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir.), *cert. denied*, 528 U.S. 947 (1999). Moreover, "[a] fair assessment of attorney performance requires every effort to be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

To demonstrate the prejudice prong, a petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane*, 178 F.3d at 312. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "However, the mere possibility of a different outcome is not sufficient to prevail on the prejudice prong. Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Crane*, 178 F.3d at 312-313 (quoting *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir.), *cert. denied*, 522 U.S. 944 (1997)).

This same two-part standard applies to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Therefore, the movant has the burden of proof and of persuasion to establish that a reasonable probability exists that but for his counsel's alleged ineffectiveness, he "would not have pleaded guilty and would have insisted on going to trial." *See Czere v. Butler*, 833 F.2d 59, 63 (5th Cir. 1987) (quoting *Uresti v. Lynaugh*, 821 F.2d 1099, 1101 (5th Cir. 1987)).

### 2. Waiver of Appeal Rights and § 2255 Rights

Tavera alleges that his counsel allowed him to waive his right to appeal without discussing the waiver with him. *See* Tavera's Memorandum of Law at p. 3. The Supreme Court has held that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Thus, only "an informed and voluntary waiver of post-conviction relief is effective to bar such relief." *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir.1994).

When Tavera entered his guilty plea, he did so pursuant to a plea agreement which contained an unambiguous waiver of his right to appeal the sentence or contest the sentence in any post-conviction proceeding. *See* Government' Exhibit C. A defendant may, as part of a plea agreement, waive the right to appeal, *United States v. Cuevas-Andrade*, 232 F.3d 440, 446 (5th Cir. 2000); *United States v. Melancon*, 972 F.2d 566 (5th Cir. 1992), and waive the right to seek post-conviction relief, as happened here. *United States v. Wilkes*, 20 F.3d 651 (5th Cir. 1994). The plea agreement will be upheld where the record clearly shows the defendant read and understood it and that he raised no question regarding any waiver issues. *United States v. Portillo*, 18 F.3d 290 (5th Cir. 1994).

In this case, Defendant signed the plea agreement confirming that he had the plea agreement read to him, had it explained to him by his attorney, understood it, and voluntarily agreed to and accepted it. *See* Government's Exhibit C. Tavera is primarily a Spanish speaker. Tavera's attorney, Nicole True, submitted a sworn affidavit stating that she met with Tavera, and (in Spanish) discussed the evidence, facts of the case, possible defenses, risks and benefits of a jury trial and risks and benefits of accepting a plea. She swears that she personally read and explained to Tavera, in Spanish, each section of the plea agreement, including the section involving waiver of his appellate rights and post-conviction rights. *See* Government's Exhibit B.

Additionally, the transcript of the rearraignment hearing, conducted November 14, 2007, reflects that (through a Spanish language interpreter) Tavera stated in open court his understanding of the plea agreement, and more specifically, his waiver of his appellate and post-conviction relief rights. In that proceeding, Tavera told the undersigned magistrate judge that he understood that "by [his] agreement, [he had] agreed to give up [his] right to appeal, that is, to challenge in any way

5

legally the conviction or the sentence that will follow from [his] plea here today, except in some very narrow circumstances." *See* Government's Exhibit D at p. 15.  Tavera stated not only that he understood the waiver, but also that he had spoken with his attorney about the waiver of appeal before he signed the plea agreement. *Id.* at 16.  At Tavera's sentencing hearing, United States District Judge Lee Yeakel also reiterated that Tavera had waived his right to appeal and other post-conviction rights.  *See* Government's Exhibit E.

The above establishes that Tavera understood the terms of the plea agreement, and that he spoke to his attorney about it prior to signing the plea agreement and making his plea of guilty. Tavera's sworn statements in open court during his rearraignment are entitled to a strong presumption of truthfulness. *See United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).  Particularly, a defendant's statements at the plea colloquy are entitled to "great weight" in the Fifth Circuit.  *See United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002).  Tavera's claim that he waived his right to appeal and right to post-conviction relief without knowing that he was doing so, is unsupported by the record.  The record shows his waiver was knowing, informed, and voluntary.

Conclusory allegations of ineffective assistance of counsel fail to surmount the formidable barrier presented by a defendant's own open court assertion at a rearraignment hearing. *United States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990).  "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  Tavera's claim that he did not understand the ramifications of signing the plea agreement is directly contradicted by his testimony under oath.  Accordingly, Tavera is not entitled to relief.

### 3.     Attorney's Alleged Promise of a Four Year Sentence

Tavera also alleges that his attorney improperly induced his plea by promising him a four-year sentence in return for his guilty plea. *See* Tavera's Memorandum of Law at p. 36. Tavera ultimately received a 168-month sentence.

When a defendant pleads guilty on the basis of a promise by his defense attorney or the prosecutor, whether or not such promise is fulfillable, breach of that promise taints the voluntariness of the plea. *Smith v. Blackburn*, 785 F.2d 545, 548 (5th Cir. 1986).  To establish this, however, he must show: (1) the exact terms of the alleged promise; (2) exactly when, where, and by whom the promise was made; and (3) the precise identity of any eyewitness to the promise. *DeVille v. Whitley*, 21 F.3d 654, 658 (5th Cir. 1994); *Smith v. McCotter*, 786 F.2d 697, 701 (5th Cir. 1986). Conclusory allegations by the petitioner are insufficient to make such a showing; there must be independent evidence supporting his claim. *McNeil v. Blackburn*, 802 F.2d 830, 833 (5th Cir. 1986); *Davis v. Butler*, 825 F.2d 892 (5th Cir. 1987).

Once again, Tavera's sworn statements at he rearraignment belie his claims here. At that proceeding, the following colloquy ensued:

> THE COURT:  Has anyone made a promise to you, other than the plea agreement you have with the government, that's caused you to plead guilty?
>
> DEFENDANT TAVERA: No, sir.
>
> THE COURT: Has anyone made any promise or prediction to you about what your sentence is going to be?
>
> DEFENDANT TAVERA: No, sir.

Government's Exhibit D at 27-28. So at his plea proceeding, while under oath, Tavera baldly denied that anyone had promised him anything about what his sentence was going to be. He now claims

7

just the opposite. Not surprisingly, he fails to offer any independent evidence supporting the claim that he was promised a four-year sentence by his counsel, but rather makes only conclusory assertions. The Fifth Circuit has held that "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsubstantiated by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011-12 and n. 2 (5th Cir. 1983); *see Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990). The Fifth Circuit has made clear that conclusory allegations of a promise are not sufficient to sustain a claim of a breach of such promise in the context of a plea agreement.

      Moreover, the record shows that the undersigned specifically warned Tavera of both the minimum and maximum sentences he could receive given the charge to which he was pleading guilty. The minimum sentence stated was five years—a year more than what Tavera claims his attorney promised him his sentence would be—and yet Tavera never expressed any concern that the minimum was higher than what he claims he had been promised. Government's Exhibit D at 18. Indeed, Tavera explicitly stated without complaint that he understood the minimum sentence was five years of imprisonment, and stated that he had no questions about sentencing, *Id.* at 20. The undersigned also informed Tavera that Judge Yeakel had the discretion to sentence Tavera from the minimum (5 years) to the maximum (40 years) that the statute permitted. *Id.* at 19. Clearly, had Tavera been of the view that he was promised a four year sentence before this proceeding, he would have spoken up about that during one of the many opportunities he was given during his plea proceeding, particularly given that at the outset of the proceedings, the following discussion took place:

> THE COURT: Now, there are a number of constitutional and statutory rights that I have to advise you of before I take your plea. As I go through this process, if there's any of those rights that you don't understand or you would like to ask me questions about them, that's fine. Please don't hesitate to speak up and ask any questions that you have, because it's important that you know the rights that you are giving up by making a plea of guilty. Okay, Mr. Morris?
>
> DEFENDANT MORRIS: Okay.
>
> THE COURT: Mr. Tavera, can you agree that you will ask questions if you have any?
>
> DEFENDANT TAVERA: That's okay.
>
> THE COURT: And Mr. Rubio?
>
> DEFENDANT RUBIO: Yes, sir.
>
> THE COURT: In addition, if at any time during this proceeding you need to talk to your attorney, that's fine, just tell me that you need to do that and we'll take a break so that you and your attorney can speak privately.

*Id.* at 4-5. Again, at no point in the proceedings did Tavera ask questions about the sentencing range, nor did he ask to speak to his attorney about it. His bald assertion of a specific sentence promised by his counsel is plainly insufficient to overcome the specific, sworn statements to the contrary made at his rearraignment. Tavera has failed to show that counsel induced him to plead guilty by promising a four-year sentence and was ineffective on this basis.

**B.     Tavera's Claims that the District Court Erred**

Tavera also claims that the District Court erred when it applied a 3B1.1(a) adjustment for his role as a leader or organizer in the drug conspiracy; relied on the PSR in determining the leader or organizer adjustment; and meted out an unreasonable sentence as compared to his co-conspirators.

Tavera's claims are not properly before the Court because he waived the right to bring the claims he now raises in this § 2255 motion. *United States v. McKinney*, 406 F.3d 744 (5th Cir.2005)

(enforcing waiver of appeal rights). This Court has already found—and it is clear from the rearraignment transcript—that Tavera understood he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motions, and this is all that is required for a knowing waiver. *United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights waiver is knowing if defendant understood he had a right, and understood he was giving it up).

Moreover, Tavera's claims that the District Court committed sentencing errors are within the scope of his waiver. These alleged errors have nothing to do with the validity of the plea agreement or waiver itself; but rather the propriety of Tavera's ultimate sentence calculation. *See United States v. White*, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver of § 2255 rights "only when the claimed assistance directly affected the validity of that waiver or the plea itself"). Any claims that the District Court erred at sentencing fail.

## IV.  RECOMMENDATION

The undersigned Magistrate Judge **RECOMMENDS** that Movant Lazaro Tavera's Motion to Vacate, Set Aside, or Correct his Sentence, pursuant to 28 U.S.C. § 2255 be **DENIED**.

## V.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under section 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c) (1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000). In cases where a district court rejected a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of the movant's section 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, a certificate of appealability shall not be issued.

## VI.  WARNING

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report

shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S.Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 2nd day of April, 2010.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE